**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MAJOR SEAN BARNETT, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:25-cv-228 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| UNITED STATES AIR FORCE, *et al.*, | : | Magistrate Judge Michael R. Merz |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER DENYING MOTIONS FOR INJUNCTIVE RELIEF
(DOC. NOS. 23, 24, 50, 59); ADOPTING REPORT AND RECOMMENDATIONS
ON MOTION FOR CIVIL CONTEMPT (DOC. NO. 38), OVERRULING
PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATIONS ON MOTION FOR CIVIL CONTEMPT (DOC.
NO. 41), AND DENYING PLAINTIFF'S COMBINED MOTION FOR CIVIL
CONTEMPT OF COURT (DOC. NO. 28); DENYING MISCELLANEOUS
MOTIONS (DOC. NOS. 40, 43, 51, 52, 53); GRANTING, IN PART, AND
DENYING, IN PART, DEFENDANTS' MOTION TO DISMISS (DOC. NO. 64);
AND, GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION
OF TIME TO FILE REPLY IN SUPPORT OF PENDING MOTIONS (DOC. NO.
68) AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY IN
RESPONSE TO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS (DOC. NO. 71)**

---

At present, the Court must address a number of pending docket entries in this case, brought

by *pro se* Plaintiff Major Sean Barnett ("Barnett") pursuant to the Administrative Procedures Act,

5 U.S.C. § 701, *et seq.* (the "APA"). (*See* Doc. No. 1.) On one hand, the Court is faced with

various motions filed by Barnett. Barnett has filed motions requesting temporary and preliminary

injunctive relief ("Motions for Injunctive Relief")[1]; he has filed Plaintiff's Combined Motion for

---

[1] *See* Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 23); Renewed Motion for Expedited Consideration of Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 24); Plaintiff's Emergency Motion to Compel Restoration of the Status Quo Ante (Doc. No. 50); Plaintiff's Combined Motion for Clarification and for Expedited Consideration Requesting Temporary Enjoining of NPDB Reporting Pending Court Determination (Doc. No. 59).

1

Civil Contempt of Court ("Contempt Motion") (Doc. No. 28), which Magistrate Judge Michael R. Merz recommends denying in his Report and Recommendations on Motion for Civil Contempt ("Contempt R&R") (Doc. No. 38); Barnett has submitted several miscellaneous motions, where he attempts to either unilaterally set deadlines, dictate the facts reflected in the record, or persuade the Court to otherwise enact a sort of petty vengeance on the Defendants ("Miscellaneous Motions")[2]; and, lastly, Barnett has filed Plaintiff's Unopposed Motion for Extension of Time to File Reply in Support of Pending Motions (Doc. No. 68) and Plaintiff's Motion for Leave to File Sur-Reply in Response to Defendants' Reply in Support of Motion to Dismiss (Doc. No. 71), both of which the Court summarily **GRANTS** in the interest of justice and proceeds with its analysis herein accordingly.

On the other side, the Court must adjudicate Defendants' Motion to Dismiss ("Defendants' Motion" or the "Motion to Dismiss") (Doc. No. 39). There, Defendants the United States Air Force ("Air Force"), Defense Health Agency ("DHA"), and the Secretary of the Air Force ("Secretary") (collectively, "Defendants") argue that Barnett has failed to state a claim. (Doc. No. 39 at PageID 400.) Specifically, Defendants contend that Barnett's APA claims must fall because Barnett failed to exhaust his administrative remedies. (*Id.* at PageID 403-07.) Additionally, Defendants suggest that Barnett's accompanying claims must be dismissed, as none of the statutes relied on by Barnett with respect to those claims provide him a cause of action. (*Id.* at PageID

---

Each of these motions, irrespective of what it is titled or which verbiage it employs, requests the same injunctive relief. Therefore, to best construe the entirety of Barnett's arguments for injunctive relief, the Court interchangeably refers to the cited motions as the "Motions for Injunctive Relief."

[2] *See* Plaintiff's Motion to Certify Facts of Contempt (Doc. No. 40); Plaintiff's Amended Motion to Certify Facts of Contempt (Doc. No. 43); Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Civil Contempt (Doc. No. 51); Plaintiff's Motion to Compel Production of the Complete Administrative Record, Personnel File, Plaintiffs [sic] Exhibits 1-5, and Transparency Certifications (Doc. No. 52); Plaintiff's Coordinated Motion for Structured Relief and Scheduling Order (Doc. No. 53).

408-10.) Since filing the Motion to Dismiss, Defendants have conceded that the DHA has taken final agency action against Barnett and, therefore, Barnett's APA claim concerning DHA should survive Defendants' Motion. (Doc. No. 64 at PageID 529.) Defendants maintain that Barnett has failed to state a claim in all other respects. (*Id.*)

Upon consideration, the Court: **DENIES** Barnett's Motions for Injunctive Relief; **ADOPTS** Magistrate Judge Merz's Contempt R&R, **OVERRULES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendations on Motion for Civil Contempt ("Objections") (Doc. No. 41), and **DENIES** Barnett's Contempt Motion; **DENIES** Barnett's Miscellaneous Motions; and, **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, Defendants' Motion to Dismiss. The Court sets forth its rationale for these determinations below.

## I.   **BACKGROUND**

At bottom, this action concerns Barnett's ability to practice medicine at Wright Patterson Air Force Base Medical Center ("WPMC"). (*See* Doc. No. 1 at PageID 1-2.) At all times relevant, Barnett was an enlisted Air Force staff nephrologist at WPMC. (*Id.* at PageID 2.) In 2023, Defendants began taking steps to separate Barnett from the Air Force and suspend his privilege to practice medicine at DHA facilities like WPMC. (*Id.* at PageID 3.) These processes continued throughout 2024 and 2025. (*See* Doc. No. 1-2 at PageID 16.) Whether rightly or wrongly, this suit was filed in July of 2025. (Doc. No. 1.)

The administrative processes pertaining to Barnett's position and privilege to practice at WPMC allegedly began, to one degree or another, in May of 2023. In the months leading up to May 2023, Barnett's colleagues and superiors apparently perceived Barnett to be mentally unwell. (*See* Doc. No. 1-2 at PageID 18.) In particular, these individuals reported issues with Barnett's purported use of social media to lambast the United States government and elected officials. (*Id.*)

3

Moreover, Barnett's cohorts at WPMC allegedly believed Barnett was disregarding advice and consulting on patient cases that were not his. (*Id.*) On May 2, 2023, Barnett did allegedly email a patient safety report to military investigators concerning a patient who it is not clear he was consulted to treat. (Doc. No. 1 at PageID 3; Doc. No. 1-4 at PageID 85-86.) Yet, Barnett claims, in a conclusory fashion, that the concerns of his peers and supervisors were meritless and based on forged documentation. (Doc. No. 1 at PageID 3.)

Nonetheless, on May 12, 2023, Barnett's superiors allegedly requested Barnett be subject to a mental health evaluation to determine if he was fit for military service. (Doc. No. 1-2 at PageID 18.) On November 17, 2023, after a second evaluation, officials issued a report allegedly diagnosing Barnett with a personality disorder and recommending he be separated from the Air Force. (*Id.* at PageID 36.)

In the nearly two years following this report, Barnett was administratively separated from the Air Force and DHA restricted Barnett's practice privileges. (*See* Doc. No. 1 at PageID 3.) Although the administrative proceedings were not final when Barnett came to this Court with his Hybrid Complaint for Declaratory and Injunctive Relief Under the Administrative Procedures Act, Damages Under the Military Claims Act, and Whistleblower Retaliation ("Complaint") (Doc. No. 1), DHA has since made a final agency decision to revoke Barnett's practice privileges. (Doc. No. 57.) Barnett has also purportedly been separated from the Air Force since filing this action. (Doc. No. 34.) However, the record does not reflect that Barnett challenged his separation through an intermediate administrative body, as he did with respect to his privileges to practice medicine.

Apparently dissatisfied with Defendants' administrative processes, Barnett filed his Complaint on July 7, 2025. (Doc. No. 1.) In the Complaint, Barnett alleges six supposed causes of action, listed as follows: violation of the APA; declaratory judgment; injunctive relief;

4

mandamus; retaliation under whistleblower protection statute; and, damages under the Military Claims Act. (*Id.* at PageID 6.) In sum, although alleged in a highly conclusory manner, Barnett avers that the adverse actions taken against him at WPMC by the Air Force and DHA were arbitrary and capricious, and, contrary to law insofar as Defendants' processes were retaliatory and flouted Barnett's constitutional rights. (Doc. No. 1-1 at PageID 10-13.)

Since bringing the current suit, Barnett has inundated the Court's docket with motions. (*See generally* Docket.) But as the smoke settles, the Court finds it most fitting to address Barnett's many motions in three broad categories. First, Barnett has filed his Motions for Injunctive Relief. Barnett filed his most recent of these motions on December 3, 2025, and the matter was fully briefed on December 29, 2025. (Doc. Nos. 59, 67, 74.) Second, Barnett has lodged the Contempt Motion, which is the subject of Magistrate Judge Merz's Contempt R&R. (Doc. No. 28, 38.) And, third, Barnett has filed a slew of Miscellaneous Motions whereby he attempts to certify otherwise unestablished facts, unilaterally dictate a case schedule, or reprimand Defendants for perceived slights. (*See e.g.*, Doc. No. 51 at PageID 485-87.) The most recent of these Miscellaneous Motions, being filed on November 24, 2025 (Doc. No. 52), became ripe for review and decision when Barnett filed his final reply brief on December 29, 2025. (Doc. No. 74.)

In addition to Barnett's filings, Defendants submitted their own Motion to Dismiss on September 29, 2025. (Doc. No. 39.) Barnett responded on October 17, 2025 (Doc. No. 46), during a lapse in federal appropriations which prevented Defendants' counsel from timely prosecuting the Motion to Dismiss. Once the government shutdown ended, Defendants were granted an extension of time and they filed their final reply brief in support of the Motion to Dismiss on December 12, 2025. (Doc. No. 64.) As stated above, Barnett then followed Defendants' reply in support of the Motion to Dismiss with a motion for leave to file a sur-reply and an accompanying

proposed sur-reply, which the Court respectively grants and considers accordingly herein.  Thus, the Court considers Defendants' Motion ripe for review and decision.

II.    **STANDARDS OF REVIEW**

When reviewing the pending motions in this matter, the Court must adhere to three particular legal standards: the standard for motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6); the standard of review applicable to a magistrate judge's report and recommendations and objections thereto; and, the standard used to evaluate a litigant's claim to injunctive relief.

A.  **Motions to Dismiss Under Rule 12(b)(6)**

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted).  Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-

55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

### B. Reports and Recommendations

Generally, pursuant to 28 U.S.C. § 636(b), a district court may appoint a magistrate judge in the district to consider non-dispositive matters in a given case. When a matter is referred to a magistrate judge, the magistrate must ultimately "file his proposed findings and recommendations … with the court," and serve a copy of the report on all parties to the case. 28 U.S.C. § 636 (b)(1)(C). In turn, any party to the subject litigation may file his objections to the magistrate judge's report and recommendations within fourteen days of being served with the same. 28 U.S.C. § 636(b)(1). Once a party files written objections to a magistrate judge's report, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### C. Motions for Injunctive Relief

A litigant may seek preliminary injunctive relief in the form of a temporary restraining order ("TRO") or a preliminary injunction, under Fed. R. Civ. P. 65. TROs are typically issued *ex parte* "if immediate and irreparable harm is shown and the movant's attorney certifies why notice is not required." *Muffler Man Supply Co., Inc. v. TSE Auto Serv., Inc.*, 739 F. Supp. 3d 598, 602 (E.D. Mich. 2024) (citing Fed. R. Civ. P. 65(b)(1)). In this vein, "TROs 'should … preserv[e] the

status quo only [until] a hearing' can be held." *Muffler Man*, 739 F. Supp. 3d at 602 (quoting *Vector Rsch. V. Howard Att'ys*, 76 F.3d 692, 696 (6th Cir. 1996)) (alterations in original).

By any token, a court considering whether to grant preliminary injunctive relief must balance four specific factors: "(1) whether the movant has established a substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the preliminary [injunctive relief]; (3) whether the issuance of the preliminary [injunctive relief] would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the preliminary [injunctive relief]." *Churchill Downs Tech. Initiatives Co. v. Michigan Gaming Control Bd.*, 767 F. Supp. 3d 556, 579 (W.D. Mich. 2025) (citing *Kentucky v. Hagel*, 759, F.3d 588, 600 (6th Cir. 2014)). Importantly, preliminary injunctive relief shall not be awarded if the plaintiff cannot demonstrate some likelihood of success on the merits and irreparable harm. *See generally Int'l. Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025). In particular, "[t]he irreparable harm factor is indispensable because, without it, a plaintiff cannot show why he needs relief now rather than at the lawsuit's end." *Smith*, 148 F.4th at 371 (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019)). The party pursuing preliminary injunctive relief "bears the burden of justifying such relief." *Moms for Liberty – Wilson Cnty., Tenn. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 508 (6th Cir. 2025) (citation and internal quotation marks omitted).

Finally, as a rule, preliminary injunctive relief "is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Churhill Downs Tech.*, 767 F. Supp. 3d at 579 (citation and internal quotation marks omitted). To that end, "[w]hether to issue a preliminary injunction is in the

discretion of the district court." *Churchill Downs Tech.*, 767 F. Supp. 3d at 597 (citing *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015)).

III.  **ANALYSIS**

Broadly speaking, the motions currently at issue can most aptly be categorized as the Miscellaneous Motions, the Contempt Motion and the Contempt R&R, Defendants' Motion to Dismiss, and Barnett's Motions for Injunctive Relief. The Court considers these pending motions as such.

A.  **Miscellaneous Motions**

At the outset, the Court denies the entirety of Barnett's Miscellaneous Motions. To reiterate, Barnett's Miscellaneous Motions seek, to one extent or another, to certify unestablished facts, unilaterally dictate the trajectory of this case, or simply enact punitive measures against Defendants. (*See* Doc. Nos. 43 at PageID 431-33; 51 at PageID 484-85; 52 at PageID 488-89; 53 at PageID 493-94.)

In effect, the Court construes Barnett's Miscellaneous Motions as motions for sanctions under Fed. R. Civ. P. 11. The Court notes that each of Barnett's Miscellaneous Motions requests relief in order to remedy an equitable wrong caused by Defendants' alleged violation of Court orders. In an attempt to certify unestablished facts pertaining to Defendants' ultimate liability, Barnett points to Defendants' purported failure to follow Court orders or otherwise dispute facts alleged in the Complaint. (*See* Doc. No. 43 at PageID 432-33.) Along these lines, Barnett's Miscellaneous Motions include a similar request to require Defendants to show cause why the Court should not hold them in contempt for perceived slights against Barnett. (Doc. No. 51 at PageID 484-87.) And, for good measure, Barnett uses the Miscellaneous Motions to attempt to dictate a truncated trajectory for this action. (Doc. No. 53 at PageID 493-95.) In doing so, he

alleges that adhering to his schedule is the only way to restore parity supposedly tainted by Defendants' failure to adhere to the Court's orders. (*Id.*)

For a court to impose such Rule 11 sanctions on a litigant, "the movant must produce clear and convincing evidence that shows that he violated a definite and specific order of the court …." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citation and internal quotation marks omitted). By this token, Barnett's contentions are improper. As explained in greater detail below, Barnett has not shown by clear and convincing evidence that Defendants have violated a Court order. Instead, Barnett has cried foul on the basis of conclusory allegations. Indeed, upon review of the Miscellaneous Motions, the Court finds that Barnett's arguments misrepresent the law and are rooted in fantasy rather than fact. Entertaining such motions is, frankly, a waste of judicial resources. Hence, Barnett's Miscellaneous Motions are **DENIED**.

### B. Contempt Motion and the Contempt R&R

The Court now considers Barnett's Contempt Motion, the Contempt R&R, and Barnett's Objections thereto. Prior to the Contempt Motion's filing, the Parties agreed to an order requiring Defendants' counsel to notify Barnett and the Court when Defendants took final agency action with respect to Barnett's administrative separation and DHA practice privileges. (Doc. No. 22.) In early September 2025, the Air Force allegedly provided Barnett with a separation date, but Defendants' counsel did not immediately notify the Court. (*Id.* at PageID 321.) Barnett responded by filing the Contempt Motion, arguing that Defendants willfully violated the Court's prior agreed order. (*Id.*) By the Contempt R&R, Magistrate Judge Merz recommends denying the Contempt Motion because Barnett has failed to establish by clear and convincing evidence that holding

Defendants in contempt will serve a compensatory or remedial purpose. (Doc. No. 38 at PageID 398-99.)

The Court has conducted a *de novo* review of the record with respect to the Contempt Motion and those portions of the Contempt R&R which were objected to. The Court has also considered Barnett's Objections and finds them to be not well-taken. To obtain a civil contempt ruling, the movant must "prove by clear and convincing evidence that the respondent violated the court's prior order." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987) (quoting *In re Newton*, 718 F.2d 1015, 1022 (11th Cir. 1983)) (internal quotation marks omitted). The Court generally agrees with the Contempt R&R insomuch as it posits that a finding of civil contempt here would not serve a remedial purpose. However, to add, Barnett has also not shown by clear and convincing evidence that the Court's prior agreed order was disobeyed to begin with. The agreed order required Defendants to provide notice on taking final agency action. Although Barnett was given a separation date, nothing in the record suggests that the Air Force had taken such final agency action. To the contrary, the letter attached to Barnett's Contempt Motion indicated that Barnett could still seek review of the decision to separate him through the Air Force Board for Correction of Military Records ("AFBCMR"). (Doc. No. 28-1 at PageID 325.) In the absence of a final agency action here, Defendants would have had no corresponding notice obligation. Accordingly, Barnett has failed to show Defendants to be in contempt.

Therefore, the Court hereby **ADOPTS** Magistrate Judge Merz's Contempt R&R, **OVERRULES** Barnett's Objections thereto, and **DENIES** the Contempt Motion.

### C. Motion to Dismiss

The Court turns next to the Motion to Dismiss, where Defendants argue that each of Barnett's alleged causes of action fails to state a claim upon which relief may be granted. (Doc.

No. 39 at PageID 400.)  The Court considers Defendants' Motion along these lines in three parts. First, the Court reviews Barnett's causes of action alleged under the Military Claims Act and the purported Military Whistleblower Protection Act.  Second, the Court examines Barnett's causes of action for declaratory judgment and injunctive relief.  Lastly, the Court disposes of Barnett's claims brought pursuant to the APA and his cause of action for mandamus relief.

### 1.  <u>Military Claims Act and Whistleblower Protection</u>

The Court has first determined to dismiss Barnett's alleged causes of action under the Military Claims Act, 10 U.S.C. § 2733, and whistleblower protections provided by 10 U.S.C. § 1034.  Neither of these statutes gives way to a cognizable private right of action.  Rather, the Military Claims Act authorizes military officials to settle certain claims raised against the United States.  10 U.S.C. § 2733(a).  Meanwhile, 10 U.S.C. § 1034 does no more than guarantee internal administrative procedures to protect from retaliation on the basis of protected communications.  At present then, Barnett has failed to state a claim under the Military Claims Act and the purported Military Whistleblower Protection Act because he cannot as a matter of law.  The claims simply do not exist unto themselves.  Therefore, the Court **GRANTS** Defendants' Motion with respect to these causes of action.[3]

### 2.  <u>Claims for Declaratory Judgment and Injunctive Relief</u>

Looking to Barnett's causes of action for declaratory judgment and injunctive relief, the Court finds these claims cannot survive Defendants' Motion.  Regarding declaratory judgment, the Declaratory Judgment Act authorizes courts to declare a litigant's substantive rights "[i]n a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201(a).  In other words, the Declaratory Judgment Act establishes a remedy, but it "does not create an independent cause

---

[3] Listed in the Complaint as Counts V and VI.

of action." *Davis v. U.S.*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 399 U.S. 667, 671 (1950)). Similarly, the law is clear that "'[i]njunctive relief is not a cause of action, it is a remedy.'" *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (quoting *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x. 440, 443 n.1 (6th Cir. 2014)). In light of these legal authorities, Barnett's claims for declaratory judgment and injunctive relief cannot stand as independent causes of action. Rather, Barnett may only pursue these avenues for relief by way of his cognizable causes of action, if any. Therefore, the Court **GRANTS** Defendants' Motion as applied to Barnett's purported claims for declaratory judgment and injunctive relief.[4]

### 3. <u>Mandamus Relief and APA Claims</u>

The Court shifts its focus again to consider the justiciability of Barnett's claims under the APA as well has his claim for mandamus relief. To clarify the latter, "[m]andamus 'is a drastic and extraordinary remedy reserved for really extraordinary causes.'" *In re Levang*, 154 F.4th 444, 448-49 (6th Cir. 2025) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)) (citation and internal quotation marks omitted). Generally, to obtain mandamus relief, a plaintiff "'must (1) have no other adequate means of obtaining relief, (2) demonstrate a right to issuance that is clear and indisputable, and (3) show that issuance of the writ is appropriate under the circumstances.'" *In re Levang*, 154 F.4th 444, 449 (quoting *In re Univ. of Mich.*, 936 F.3d 460, 466 (6th Cir. 2019)). Yet, where a plaintiff "seeks both mandamus relief and relief under the APA, Courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x. 390, 393 (6th Cir. 2013) (quoting *Nelson v. United States*, 107 F. App'x. 469, 471 (6th Cir. 2004)) (internal quotation

---

[4] Listed in the Complaint as Counts II and III.

marks omitted).  Put most simply, in this case, Barnett's claim to mandamus relief will rise and fall with his APA claims.  *See Omar v. Blinken*, 756 F. Supp. 3d 520, 529 (S.D. Ohio 2024) ("Because the Court may review [p]laintiffs' claims under the APA, it may therefore review the request for mandamus").

Substantively then, in their Motion to Dismiss, Defendants contend that Barnett's APA claims cannot stand because Barnett did not exhaust his administrative remedies before filing the Complaint.  (Doc. No. 39 at PageID 403-07.)  Since lodging their Motion to Dismiss, Defendants have conceded that DHA has taken final agency action regarding Barnett's practice privileges and, therefore, Barnett's APA claim against DHA may proceed.  (Doc. No. 64 at PageID 529.)  The Court agrees and **DENIES** Defendants' Motion with respect to Barnett's APA claim against DHA. However, whether Barnett has stated an actionable claim under the APA for his administrative separation from the Air Force remains at issue.

For his part, Barnett argues that he did exhaust his administrative remedies.  (Doc. No. 46 at PageID 453.)  Specifically, as it pertains to Barnett's administrative separation, Barnett states, in a conclusory fashion, that he "has exhausted the [AFBCMR] concerning retaliation, discharge, and PTSD."  (*Id.* at PageID 454.)  Alternatively, Barnett posits that he should be excused from the APA's exhaustion requirement.  (*Id.*)

Fundamentally, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Notwithstanding, the APA narrows the range of reviewable agency actions to "final agency action for which there is no other adequate remedy in a court."  This final agency action requirement comports with the Supreme Court's "administrative-exhaustion doctrine, which 'provides that no one is entitled to judicial relief for a

14

supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"
*Pakdel v. City and Cnty. of San Francisco, California*, 594 U.S. 474, 479 (2021) (quoting
*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)).

"Exhaustion requirements must be applied 'with a regard for the particular administrative
scheme at issue.'" *Joseph Forrester Trucking v. Dir., Off. Of Workers' Comp. Programs*, 987
F.3d 581, 590 (6th Cir. 2021) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Military
servicemembers seeking to challenge personnel actions, as Barnett does here, must exhaust all
available intraservice corrective measures before pursuing judicial review. *Harkness v. Dep't. of
Navy*, 858 F.3d 437, 444 (6th Cir. 2017). Reviewing courts have found this exhaustion
requirement to be particularly necessary in military personnel actions, "given the judiciary's lack
of expertise in areas of military judgment and its long-standing policy of non-intervention in
internal military affairs." *Heidman v. U.S.*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (collecting
cases). Consequently, courts in the Sixth Circuit have largely found that a military branch's
personnel action will not be considered final and justiciable unless and until the servicemember
has sought review of the personnel action through his branch's Board for Correction of Military
Records. *See Seepe v. Dep't. of the Navy*, 518 F.2d 760, 764 (6th Cir. 1975); *see also Heidman*,
414 F. Supp. at 48-49 (N.D. Ohio 1976).

In the instant action, Barnett has failed to exhaust available administrative remedies related
to his separation from the Air Force. Barnett may have received a separation date, but he did not
seek review of that decision through the AFBCMR. At most, Barnett has provided a relatively
non-descript letter, signed on May 11, 2025, from AFBCMR officials advising that Barnett's
application for correction of military records would be denied. (Doc. No. 28-1 at PagID 325.)
However, this letter cannot constitute final agency action separating Barnett because Barnett could

not seek administrative review of such a decision until he was effectively separated from the Air Force. Recall that Barnett had not received a separation date when he filed this suit in July 2025, and did not receive an actual separation date from the Air Force until September 2025. On the current record, had the Air Force made a final decision regarding Barnett's employment at WPMC in May of 2025, it is not plausible to think that the organization would have waited four months to provide Barnett with a separation date. What is more, Barnett has offered neither allegation nor evidence which would allow the Court to reasonably infer otherwise.

The Court further finds that no equitable exceptions to the general administrative exhaustion requirement of the APA may be applied to Barnett's case. In the past, courts have recognized that a plaintiff may be excused from a non-jurisdictional exhaustion requirement along equitable grounds. *See Seepe*, 518 F.2d at 762; *see also Hagel*, 759 F.3d at 599. In some instances, exhaustion may be excused "if a litigant can show: (1) that requiring exhaustion will result in irreparable harm; (2) that the administrative body is wholly inadequate; or (3) that the administrative body is biased, making recourse to the agency futile." *Hagel*, 759 F.3d at 599 (citations omitted). In the military context, courts may also excuse the exhaustion requirement "where the complaint involve[s] a matter of law only and [does] not require or involve application of military expertise …." *Seepe*, 518 F.2d at 762 (citations omitted).

Here, the Court cannot tether any of these excuses to Barnett's failure to exhaust administrative remedies with respect to his separation from the Air Force. Barnett has certainly put words to paper on the issue, but he has said absolutely nothing. To be sure, requiring Barnett to exhaust his administrative remedies would not irreparably harm him, but would give him an opportunity to obtain the relief he seeks in this case. To that end, the Court is of the understanding that the AFBCMR would have the authority to grant Barnett the full ambit of relief he pursues in

this action.  Moreover, Barnett has not demonstrated the AFBCMR to be biased to the point of futility and the Court cannot conceive of a valid reason why the Air Force's personnel action against Barnett would not be a fact-intensive matter and subject to military expertise.  Rather, the Court could likely benefit from a complete administrative record, compiled by those with a working knowledge of the Air Force's personnel standards and practices.

Ultimately, the Court finds that Barnett has inexcusably failed to exhaust his administrative remedies with respect to his administrative separation from the Air Force.  Accordingly, the Court **GRANTS** Defendants' Motion as to Barnett's APA claim in this regard.[5]

### D. <u>Motions for Injunctive Relief</u>

The Court sets its sights last on Barnett's Motions for Injunctive Relief.  For the sake of clarity, in light of the foregoing, consideration of the Motions for Injunctive Relief will be limited to DHA's decision to revoke Barnett's practice privileges.  To the extent that the Motions for Injunctive Relief are aimed at Barnett's administrative separation from the Air Force, the Motions for Injunctive Relief are **DENIED**.

As it relates to his DHA practice privileges, Barnett seeks a TRO until such time as the Court may conduct a preliminary injunction hearing.  (*See e.g.*, Doc. No. 23 at PageID 279.)  In particular, Barnett petitions for the Court to enjoin Defendants from "[m]aintaining or disseminating any adverse credentialing determinations" or "[i]nterfereing with [Barnett's] civilian medical practice or employment."  (*Id.*)  In support, Barnett states that the DHA's adverse action against him violated DHA procedures and Barnett's constitutional rights.  (*Id.* at PageID

---

[5] On January 9, 2026, while the Court was preparing the instant Order, Barnett filed Plaintiff's Motion for Partial Summary Judgment (Doc. No. 76), seeking judgment in his favor regarding his administrative separation from the Air Force.  Because the Court finds that Barnett has failed to state a claim upon which relief may be granted in this respect, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 76) is hereby rendered **MOOT**.

278.)  Barnett further submits that he will face irreparable harm in the way of loss of medical licensure and damage to his professional reputation.  (*Id.*)

The Court finds that Barnett is unlikely to succeed on the merits, as he must to secure injunctive relief.  As pertinent to Barnett's case, the statutory text of the APA requires that an agency action can only be held unlawful if the action is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).  By this text alone, Barnett's allegations are insufficient to succeed or raise a substantial question regarding his APA claim against DHA.  Barnett has alleged that the DHA violated his rights and forged documentation to do so.  (*See* Doc. No. 1 at PageID 3.)  These are conclusory allegations and Barnett has provided the Court with no substantive factual allegations that would allow for such inferences.  Indeed, the majority of the substantive facts to be gleaned from the Complaint come from attachments thereto; attachments which facially undercut Barnett's conclusory suggestion that DHA's actions ran afoul of procedure and the Constitution.

Nor is Barnett likely to suffer irreparable harm in the absence of injunctive relief.  The DHA has not revoked Barnett's privilege to practice medicine altogether.  Rather, the DHA found cause to suspend Barnett's privileges at WPMC specifically and committed to report this finding to the National Practitioners Database.  Barnett has every right and opportunity to dispute and correct DHA's report through the Database.  If that dispute were successful, Barnett would

18

effectively receive the same relief he seeks here. Thus, the Court finds that Barnett's Motions for Injunctive Relief must be **DENIED**, as he appears unlikely to succeed on the merits of his case and he cannot establish irreparable harm.

The Court further finds that it may reach this conclusion without conducting a preliminary injunction hearing. Generally, Fed. R. Civ. P. 65 "'contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party and after a hearing.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (quoting *Carpenters' Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958)). However, a hearing is not required where there are no disputed material factual issues. *Id.* at 552-53. Here, there are no disputed material factual issues to justify an evidentiary hearing concerning Barnett's Motions for Injunctive relief. Again, all of Barnett's allegations which might give rise to a dispute are wholly conclusory in nature. The Court will not find a dispute of material fact based upon conclusory allegations. *See Anatomic & Clinical Lab'y Assocs., P.C. v. Cigna Health & Life Ins. Co.*, No. 3:22-CV-00767, 2023 WL 6392732, at *10, n. 6 (M.D. Tenn. Sept. 29, 2023) (declining to find a dispute of material fact when plaintiff's dispute was based on mere conclusory allegations). Were the Court to find otherwise, parties could take control of the Court's docket by simply stating their conjecture. This, the Court finds, would impermissibly curtail judicial discretion in the issuance of injunctive relief. As such, the Court denies Barnett's Motions for Injunctive Relief without conducting a preliminary injunction hearing.

## IV.    <u>CONCLUSION</u>

In sum, and in accordance with the foregoing, the Court rules as follows:

1. The Court hereby **DENIES** Barnett's Miscellaneous Motions, to wit: Plaintiff's Motion to Certify Facts of Contempt (Doc. No. 40); Plaintiff's

Amended Motion to Certify Facts of Contempt (Doc. No. 43); Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Civil Contempt (Doc. No. 51); Plaintiff's Motion to Compel Production of the Complete Administrative Record, Personnel File, Plaintiffs [sic] Exhibits 1-5, and Transparency Certifications (Doc. No. 52); and Plaintiff's Coordinated Motion for Structured Relief and Scheduling Order (Doc. No. 53). The Clerk of Court is hereby **DIRECTED** to dispose of said Miscellaneous Motions accordingly on the Court's docket;

2. The Court hereby **ADOPTS** the Report and Recommendations on Motion for Civil Contempt (Doc. No. 38), **OVERRULES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendations on Motion for Civil Contempt (Doc. No. 41), and **DENIES** Plaintiff's Combined Motion for Civil Contempt of Court (Doc. No. 28);

3. The Court hereby **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, Defendants' Motion to Dismiss (Doc. No. 39). Specifically, the Court **DENIES** Defendants' Motion with respect to Barnett's APA claim against DHA. The Court hereby **GRANTS** Defendants' Motion to Dismiss in all other respects. Consequently, the Air Force and the Secretary, as well as the claims against them, are hereby **DISMISSED** from this action and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 76) is hereby rendered **MOOT**. The Clerk is **DIRECTED** to dispose of these filings on the Court's docket accordingly;

4. The Court hereby **DENIES** Barnett's Motions for Injunctive Relief, to wit:

Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 23); Renewed Motion for Expedited Consideration of Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 24); Plaintiff's Emergency Motion to Compel Restoration of the Status Quo Ante (Doc. No. 50); Plaintiff's Combined Motion for Clarification and for Expedited Consideration Requesting Temporary Enjoining of NPDB Reporting Pending Court Determination (Doc. No. 59). The Clerk of Court is **DIRECTED** to dispose of Barnett's Motions for Injunctive relief on the Court's docket in keeping with this finding; and,

5. The Parties are hereby provided **NOTICE** that the Court shall conduct a telephone conference with the Parties on Wednesday, February 4, 2026, at 10:30 AM. At that time, the Court intends to forge a path forward in this case regarding Barnett's remaining APA claim against the DHA. Separate notice of call-in information to issue.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, January 20, 2026.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE